

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MEG:JMS/DGR/NJM

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 18, 2020

<u>By Hand and ECF</u>

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Jeffrey Bush, <u>et al</u>.
     <u>Docket No. 19-CR-378 (S-1) (DLI)</u>

Dear Judge Scanlon:

  The government writes in advance of the Court's arraignment of defendants Tyshawn Atkins, James Sease, Montel Shuemake and Rodolfo Zambrano (collectively, with defendants Jeffrey Bush, Louis Love and Marvin Pippins, the "Defendants") on the charges in the above-captioned superseding indictment (the "Superseding Indictment"), which is scheduled for 2:00 p.m. today.[1]  As set forth below, the Defendants are members of the 5-9 Brims set of the Bloods street gang, a violent criminal enterprise operating in Brooklyn, New York, and elsewhere.  The Defendants are each charged with racketeering conspiracy and variously charged with conspiring in-aid-of racketeering to commit murder and assault and to traffic narcotics.  In addition, defendant Pippins is charged with murder in-aid-of racketeering and defendants Bush, Pippins, Sease, Shuemake and Zambrano are charged with using firearms in furtherance of a drug trafficking offense, each of which carries the presumption of detention.  This letter is respectfully submitted in support of the government's request for permanent orders of detention as to each of the Defendants based on the danger they pose to the community and the risk that they will flee prosecution.

---

  [1] The Superseding Indictment also charges defendants Jeffrey Bush, India Lane and Yonette Respass, who will each be arraigned at a later date.

I.      Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Sections 3141, et seq. (the "Act"), federal courts "shall" order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis:

> (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . .";
>
> (2) "the weight of the evidence against the person";
>
> (3) "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings"; and
>
> (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

Under the Bail Reform Act, a presumption both of flight and dangerousness arises when there is probable cause to believe a defendant committed an offense in violation of 18 U.S.C. § 924(c). 18 U.S.C. § 3142(e)(3)(B). The presumption means that the Court must initially presume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. The defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant were to meet his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id. A bail package sufficient to overcome a presumption of flight may not be enough to overcome a presumption of

2

dangerousness. United States v. Rodriguez, 950 F.2d 85, 89 (2d Cir. 1991). Regardless of whether the presumption applies, the government must ultimately persuade the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. Mercedes, 254 F.3d at 436.

II.   Argument

For the reasons set forth below, the Defendants would each pose a significant danger to the community if released pending trial, and no combination of bail conditions would ensure the safety of the community and the Defendants continued appearance before the Court. Permanent orders of detention should therefore be entered.

   A.   The Enterprise[2]

As alleged in the Superseding Indictment, the 5-9 Brims set of the Bloods is a violent street gang, whose members have engaged in criminal activities including drug trafficking, robbery and fraud, as well as murder, assault and firearms offenses. Between January 2012 and February 2020, the Defendants, together with others, conspired to conduct the affairs of the enterprise through a pattern of racketeering acts including identification fraud and access device fraud; narcotics trafficking; and multiple acts involving murder.

All of the Defendants' membership in the enterprise is confirmed through evidence seized from cellular telephones and social media accounts, among other sources. Seized photographs and videos depict the Defendants displaying gang signs for the 5-9 Brims, referring to each other as "Hats" (a slang term for members of the Brims), wearing the Bloods' signature color red, and, critically, engaging in communications regarding various illegal schemes designed to enrich themselves and the enterprise. In particular, the investigation revealed that the Defendants made large sums of money from selling crack, cocaine, marijuana and pills, including ecstasy and oxycodone. They often supplied each other with the narcotics, sharing in the illicit proceeds and passing part of those proceeds on to incarcerated members of the enterprise.

Related to this unlawful drug distribution, defendant Bush was charged in the original indictment for distributing more than 280 grams of crack (Count Nine in the Superseding Indictment). The Superseding Indictment charges defendants Bush, Atkins, Love, Pippins, Sease, Shuemake and Zambrano with conspiring to possess with intent to distribute various controlled substances. Relatedly, members of the enterprise frequently

---

[2] The government is entitled to proceed by proffer in detention hearings. United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

used firearms in relation to their narcotics trafficking, which helped ensure that their drug supplies and profits were protected. For this conduct, Bush, Pippins, Sease, Shuemake and Zambrano are charged with the unlawful use of firearms during and in relation to a drug trafficking crime.

Supplementing their lucrative drug business were the Defendants' numerous financial frauds, which involved the possession and use of stolen identities, fraudulent checks and access devices such as credit cards or bank account information. These crimes, which members referred to colloquially as "scamming," generated substantial money for the Defendants and allowed them to make fraudulent purchases, often to the detriment of the innocent victims whose identities and credit cards the Defendants had fraudulently obtained.

Beyond making money illegally and for their own gain, the 5-9 Brims agreed to commit and committed various acts of violence for the purpose of establishing, maintaining and increasing their power and reputation as an enterprise. This often meant executing stabbings or shootings to prove themselves, or on behalf of another gang member. And, it meant executing serious physical assaults and murder, some of which acts are outlined in more detail below.

  B. <u>The Real Ryte Murder Conspiracy and the Murder of Sean Peart (Counts Two through Four)</u>

During the charged period, a faction of the 5-9 Brims known as the "Breadgang" were feuding with a rival crew known as "Real Ryte," whose members also operated in Brooklyn. In the course of the feud, defendants Pippins, Sease and Shuemake conspired to murder rival members of Real Ryte by hunting them throughout Brooklyn while intending to shoot and kill them "on sight." As part of this dispute, on December 19, 2015, defendant Pippins shot and killed Sean Peart, a young Real Ryte member. As captured by surveillance cameras that day, Peart sat in his car in broad daylight on a public street in Brooklyn when a lone gunman approached the car window and shot Peart multiple times, killing him. The gunman who executed Peart was Pippins, who is charged with murder in-aid-of racketeering and the unlawful use of a firearm resulting in death.

  C. <u>Conspiracy to Commit Assault In-Aid-Of Racketeering (Count 5)</u>

In 2018, members of the 5-9 Brims agreed to commit and orchestrated a violent assault against bartenders at a night club in Queens called "Angels" because members of the enterprise believed the bartenders had disrespected another member of the gang. Specifically, defendant Respass, who was serving a sentence at the Federal Correctional Institution in Danbury at the time, commissioned her subordinates in the enterprise (known as "drops") to execute an assault on the purportedly offending bartenders. Despite being

4

incarcerated, Respass nevertheless wielded the power of the enterprise to orchestrate the attack and directed multiple 5-9 Brim members, including defendants Lane and Bush, that Brims members needed to deliver the message and "pop that bottle" on one of the bartenders, stating "I want hands put on them. I don't even want no talking." Defendant Lane agreed with defendant Respass that the assault needed to be executed, and that if defendant Respass's drops failed to do so, defendant Lane would take care of it herself.

On August 15, 2018, following defendant Respass's orders, defendants Bush, Love, Zambrano and three of Respass's drops assembled at Angels night club. Surveillance footage inside the venue captured images of the premeditated assault on the bartender. Defendants Bush and Zambrano stood at the corner of the bar next to several women. A woman standing next to defendant Bush ordered a drink from the intended target, and then lured her closer, gesturing for her to lean towards them. As defendant Bush stood by with a cellular telephone's camera trained on the intended victim, the women next to defendant Bush grabbed the bartender's hair, and, along with two other women, repeatedly beat her head while pulling her over the bar. Ultimately, the assailants threw a bottle at the bartender. Throughout, defendant Bush stood next to the women with his cellular telephone's camera filming the entire assault.

After the attack, the video captured by defendant Bush was sent to the gang member on behalf of whom defendant Respass had ordered the assault. Dissatisfied with the first attack, defendant Respass continued communicating with other enterprise members about the assault, and discussed whether the assault was vicious enough or if 5-9 Brims needed to attack the victim again. Another assault ultimately did take place, approximately two weeks later, during which several members of the 5-9 Brims, including defendant Bush, attacked the same targeted bartenders at Angels.[3]

D. The Defendants Are Dangers to the Community

In addition to the serious nature of the crimes set forth above, the Defendants' respective roles in the charged crimes reveal further evidence of the danger they pose to the community. Moreover, as outlined below, many of them have serious criminal histories which also weigh substantially in favor of detention.

---

[3] As discussed in more detail below, the second assault is the subject of a separate prosecution by the Queens County District Attorney's Office.

i.  Jeffrey Bush, also known as "Chuck" and "Chuck Taylor"

Defendant Bush was a high-ranking member of the Brooklyn 5-9 Brims before he was arrested and ordered permanently detained in August 2019 on the charges contained in the original indictment in this case. He is now indicted for racketeering conspiracy, conspiracy to commit assault in-aid-of racketeering, conspiracy to possess with intent to distribute various controlled substances, unlawful use of firearms in furtherance of drug trafficking—for which a rebuttable presumption of detention applies—in addition to his original charge of possessing more than 280 grams of crack with intent to distribute it. If convicted of the charged crimes, defendant Bush, who has previously been convicted of two felonies and two misdemeanors, faces a fifteen-year mandatory minimum term of imprisonment.

As outlined in the original detention memo in his case, between February 2019 and August 2019, defendant Bush conducted at least six sales of crack cocaine totaling over 280 grams of cocaine base, for which he was paid over $12,000. Each of these transactions was surveilled and/or recorded. The investigation also revealed that defendant Bush obtained cocaine from a supplier, which defendant Bush then cooked into crack in his apartment, where at least two young children had been residing along with defendant Bush's girlfriend. Defendant Bush was additionally observed bringing a young child with him to conduct one of the crack sales during which defendant Bush was carrying over 60 grams of crack on his person.

At the time of his arrest, a search executed at defendant Bush's apartment revealed that he was in possession of various narcotics including a bag containing a white, rocky substance believed to be crack cocaine, unknown pills and a small amount of a green leafy substance believed to be marijuana, as well as nearly $15,000 in cash. At the time of defendant Bush's arrest, a scale commonly used to weigh narcotics was thrown from the window of defendant Bush's apartment and was subsequently recovered by law enforcement. All of this evidence will be offered in support of the narcotics conspiracy and racketeering conspiracy charges contained in the Superseding Indictment. Additionally, law enforcement observed in defendant Bush's apartment various devices related to the creation and use of fraudulent credit cards, evidencing that defendant Bush engaged in the scamming activity outlined in the racketeering count in the Superseding Indictment.

Defendant Bush has previously been convicted of two felonies and two misdemeanors, including prior drug offenses. He is also currently facing additional felony assault charges in Queens Supreme Court, stemming from an August 29, 2018 physical altercation at Angels Strip Club in Queens, New York. Defendant Bush served as "muscle" for celebrity rap singer Belcalis Almanzar, also known as "Cardi B," in a fight with two female employees at the club. These actions are related to his role in the August 15, 2018

6

assault at Angels for which defendant Bush is currently charged in Count Five of the Superseding Indictment. For their conduct in the August 29 attack, defendant Bush, Almanzar and one other co-defendant are charged in a fourteen-count state indictment which includes felony charges for attempted assault with intent to cause physical injury with a weapon and attempted assault with intent to cause serious physical injury. Defendant Bush was released on bail in Queens, and it was during that release period that he sold more than 280 grams of crack cocaine, as charged in the Superseding Indictment. The defendant is also currently wanted by the Scranton, Pennsylvania Sherriff's Office due to an outstanding case.

Previously, on September 18, 2017, defendant Bush pled guilty to a misdemeanor offense, criminal sale of a controlled substance, and was sentenced to a conditional discharge. On November 4, 2004, defendant Bush pled guilty in state court in Harrisburg, Pennsylvania to a violation of the narcotics code, as well as to criminal conspiracy, both felony counts. He additionally pled guilty to the misdemeanor crime of providing false identification to law enforcement. Defendant Bush was sentenced to 3 to 23 months' incarceration.

For all of these reasons, defendant Bush should remain incarcerated pending trial.

ii. Marvin Pippins, also known as "Mukk"

Defendant Pippins is a longstanding member of the 5-9 Brims. Together with other 5-9 Brims members, defendant Pippins conspired to murder members of the rival gang Real Ryte and, as recounted above, he murdered Real Ryte member Sean Peart in broad daylight, in the middle of a street in Brooklyn. Defendant Pippins faces a mandatory sentence of life imprisonment if convicted. In addition to murder and murder conspiracy, defendant Pippins is also charged with racketeering conspiracy, narcotics conspiracy and use of a firearm in furtherance of a drug trafficking crime, for which a rebuttable presumption of detention applies. Defendant Pippins' history of violence preceded the charged murder, as he was previously convicted of attempted robbery and criminal possession of a weapon in 2010 and 2014, respectively.

Accordingly, to protect the public from defendant Pippins and to ensure his continued appearance in this case, the Court must detain defendant Pippins pending trial.

iii. Montel Shuemake, also known as "Buzzo"

Defendant Shuemake is a violent member of the enterprise and poses a risk of flight and a danger to the community if released from custody. As alleged in the Superseding Indictment, defendant Shuemake conspired with defendants Sease and Pippins

to murder members of a rival gang known as "Real Ryte." He also participated in the drug trafficking conspiracy and unlawfully possessed firearms in connection therewith, so he is subject to a rebuttable presumption of detention. Defendant Shuemake faces a mandatory minimum sentence of five years' to life imprisonment for his crimes.

Defendant Shuemake's membership in the enterprise is longstanding, and his status in the enterprise has risen over time. Indeed, defendant Shuemake was recently elevated to the "Lo" position for the enterprise in Brooklyn. Defendant Shuemake reported his promotion to an incarcerated 5-9 Brims member in an October 16, 2019 recorded prison call. During that call, the inmate asked defendant Shuemake about the current "line up" for the enterprise, and defendant Shuemake informed him: "I'm the L-O now." As the "Lo," defendant Shuemake would be the second highest ranking non-incarcerated Brim behind the "Hi" and the godfather or "GF" for the enterprise.

Accordingly, given the nature of the charges and defendant Shuemake's role in them, defendant Shuemake should be held in custody pending trial.

   iv. <u>James Sease, also known as "Chop Whop"</u>

Defendant Sease is a longstanding member of the 5-9 Brims. As alleged in the Superseding Indictment, defendant Sease has committed numerous crimes as part of his membership in the enterprise, including conspiring with defendants Shuemake and Pippins to murder members of a rival gang known as "Real Ryte." For his conduct, defendant Sease is charged in Count One with racketeering conspiracy, and, in Count Two, with conspiracy to commit murder in-aid-of racketeering. Defendant Sease is also charged in Count Six with participating in a drug conspiracy that involved at least 280 grams of crack-cocaine, and in Count Seven with the possession of firearms during and in relation to a drug trafficking crime, for which a rebuttable presumption of detention applies. Defendant Sease faces a mandatory minimum sentence of fifteen years' imprisonment and up to life if convicted of the charged crimes.

Defendant Sease has a history of prior arrests and convictions. Defendant Sease is presently on pre-trial release from drug charges in New York County Supreme Court.[4] He additionally has prior convictions for sale of a controlled substance, assault and drunk driving, with multiple bench warrants being issued when he was released on bond in those cases. Notably, throughout the charged time period of his racketeering activities, defendant Sease was serving probationary sentences from his underlying state convictions.

---

   [4] Defendant Sease was initially detained pending trial until recently posting bond in November 2019.

Given the seriousness of the charges in the Superseding Indictment, and defendant Sease's demonstrated history of failing to appear and disobeying court orders, defendant Sease must be detained pending trial.

     v.     Rodolfo Zambrano, also known as "Latinn Dinero"

As alleged in the Superseding Indictment, defendant Zambrano helped further the enterprise's drug trafficking activity, possessed firearms, and conspired with defendants Bush, Love and others to commit the assault at Angels in August 2018. If convicted, defendant Zambrano faces a fifteen-year mandatory minimum sentence.

Evidence seized from cellular telephones and social media accounts shows that defendant Zambrano was an active member of the enterprise and close confidant of defendant Bush. Illustrative of defendant Zambrano's access to firearms, on July 4, 2019, defendant Zambrano sent defendant Bush a photograph of three firearms in a duffle bag:



Similarly, using the encrypted messaging app WhatsApp, defendant Zambrano sent defendant Bush photographs of other firearms, including the following photograph of a semi-automatic pistol with a magazine capable of holding 50 rounds of .40 caliber ammunition.

10



Possession of such weaponry is troubling on its own. When coupled with defendant Zambrano's membership in the charged violent criminal enterprise, these images make clear the danger defendant Zambrano poses to the community if released on bail. Accordingly, given the seriousness of the charges and defendant Zambrano's role in them, he should be held in custody pending trial.

      vi.    <u>Louis Love, also known as "Scoobz" and "Scoobie"</u>

Defendant Love is a longstanding member of the enterprise who is charged with racketeering conspiracy, conspiring to commit an assault in-aid-of racketeering, possessing marijuana with intent to distribute it and conspiring to distribute various other narcotics. Defendant Love was trusted by defendant Bush to assault an innocent bartender

11

who had offended another member of the enterprise. Indeed, defendant Love was part of the crew of 5-9 Brims sent by defendant Respass to ensure the enterprise remained respected. Defendant Love recounted all the details of the assault to defendant Respass, bragging to her that "Niggas got rite on [the victim]" and "Them bitches got her. Bitches got her." Defendant Love described to defendant Respass his willingness to use violence the night of the assault, recounting to defendant Respass how he was ready for a "royal rumble" in Angels.

Given defendant Love's membership in the enterprise, his demonstrated willingness to use violence and assist others in their acts of violence, defendant Love should be detained pending trial.

vii. Tyshawn Atkins, also known as "Breeze"

Defendant Atkins is a 5-9 Brims member who was involved in the trafficking of drugs and committing fraud with other members of the enterprise. For his role, defendant Atkins is charged in two counts in the Superseding Indictment and faces up to twenty years' in prison.

Defendant Atkins incurred two felony convictions in the last six months, which underscores the danger defendant Atkins poses to the community if released. On January 16, 2019, defendant Atkins was arrested for criminal sale of a controlled substance after he sold heroin to an undercover police officer in Nassau County. Defendant Atkins posted bail after his arrest. His pending charges did not deter him, however, as less than three months later, defendant Atkins was arrested again, on March 5, 2019, for possession of a firearm, among other offenses. These charges stemmed from the NYPD's execution of a search warrant at an apartment in the Marlboro Houses during which the police found defendant Atkins and others inside, along with a loaded semi-automatic Taurus 9mm firearm, drugs, and at least one forged instrument. On August 8, 2019, defendant Atkins pled guilty in Kings County Supreme Court to criminal possession of a firearm. Defendant Atkins thereafter pled guilty in Nassau County for criminal sale of a controlled substance in the fifth degree. Defendant Atkins was sentenced to one year of imprisonment on both convictions and is currently in state custody serving those sentences.

E. The Defendants Are Flight Risks

Given the seriousness of the charged offenses, many of the defendants are facing significant sentencing exposure. The defendants charged with a 924(c) count face mandatory minimum sentences of at least five years. See 18 U.S.C. § 924(c)(1)(A)(i). The defendants charged with conspiring to distribute at least 280 grams of crack face a mandatory

minimum sentence of 10 years' imprisonment. See 21 U.S.C. § 841(b)(1)(A)(iii). Defendant Bush notably faces a fifteen-year mandatory minimum sentence, while defendant Pippins faces a mandatory term of life imprisonment.

When the incentive to flee is so strong, no combination of sureties and other restrictions can assure a defendant's appearance. See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant faced a presumption against release, and a mandatory minimum sentence that incentivized fleeing); United States v. Henderson, 57 F. App'x. 470, 471 (2d Cir. 2003) (summary order) ("the presumption regarding flight risk has changed because [the defendant] now faces a ten-year mandatory minimum sentence"). That remains true even with electronic surveillance and home confinement. See United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks omitted); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

## CONCLUSION

The government respectfully submits that the Court should find that defendants Bush, Atkins, Love, Shuemake, Sease, Pippins and Zambrano pose a danger to the community and a risk of flight. There is no condition or combination of conditions that will assure the safety of the community, the Defendants' return to court, or their compliance

with the Court's directives. Accordingly, the government requests that the Defendants be permanently detained pending trial.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/
Jennifer M. Sasso
Drew G. Rolle
Nicholas J. Moscow
Assistant U.S. Attorneys
(718) 254-7000

cc: All Defense Counsel of Record (by ECF)